UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUELYN THOMPSON,

    Plaintiff,

v.                                                                          Case No. 8:19-cv-997-T-60CPT

G4S SECURE SOLUTIONS
(USA) INC.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Before me on referral is the parties' *Renewed Joint Motion to Approve Settlement Agreement* (Renewed Motion). (Doc. 32). For the reasons discussed below, I respectfully recommend that the parties' Renewed Motion be granted.

I.

    Plaintiff Jacquelyn Thompson initiated this action in April 2019 against her former employer, G4S Secure Solutions (USA) Inc. (G4S), seeking to recover, *inter alia*, unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* (Doc. 1). Thompson averred in her complaint that, during her tenure at G4S as a non-exempt, hourly employee, she worked more than forty hours per week

but was not paid the required rate of one and a half times her regular pay for those overtime hours. *Id.* at 2-3.

In May 2019, in response to the Court's interrogatories, Thompson elaborated upon her allegations, stating that she sought overtime pay for the period between April 25, 2016, and November 16, 2017, and that she worked more than eighty hours of overtime per week during this time frame. (Doc. 9 at 3). As a result, she asserted that she was entitled to $210,276 in unpaid wages and an equal sum in liquidated damages, for a total amount of $420,552. *Id*. In its answer, G4S denied Thompson's allegations and raised several affirmative defenses. (Doc. 11).

In March 2020, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), the parties filed a motion seeking approval of an agreement they negotiated to settle Thompson's FLSA claim. (Doc. 27). Under that settlement, G4S agreed to pay Thompson $11,123 in unpaid overtime wages and liquidated damages, as well as $8,877 in attorneys' fees and costs. (Doc. 27-1 at 2). The parties' agreement also contained a release provision, in which Thompson acknowledged, *inter alia*, that the $11,123 settlement figure "fully compensate[d] her for any unpaid wages, compensation, and/or overtime she would have been entitled to for her full limitations period." *Id*. at 1.

In April 2020, the Court denied the parties' motion without prejudice. (Doc. 31). The Court observed that, although the parties proposed that Thompson resolve her FLSA unpaid wage claim for less than 3% of the sum she originally sought, they

provided the Court "with little basis"—other than "summary assertions"—"on which to determine the fairness or reasonableness of [their] compromise or how they arrived at their ultimate settlement figure." (Doc. 31 at 4) (citing *Lee v. Guyoungtech USA, Inc.*, 247 F. Supp. 3d 1257, 1262 (S.D. Ala. 2017)).

The parties' Renewed Motion, which contains a more detailed explanation supporting their proposed settlement agreement, followed. (Doc. 32).

II.

Although outlined in the Court's April 2020 Order, the law governing judicial review of FLSA settlement agreements bears repeating here. Congress enacted the FLSA to protect employees from the "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d at 1352. To further this Congressional purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704-05 (1945)).

In FLSA actions brought directly by current and former employees for unpaid wages, district courts must scrutinize the settlement "for fairness" before dismissing an action. *Id.* at 1306-07 (quoting *Lynn's Food*, 679 F.2d at 1353). Specifically, courts must determine that the settlement is a "fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355.

3

District courts are afforded discretion in deciding whether to approve FLSA settlements. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013) (citation omitted).[1] If the court finds that an agreed-upon resolution reflects a fair and reasonable compromise of the issues in dispute, it may approve the resolution "in order to promote the policy of encouraging settlement in litigation." *Lynn's Food*, 679 F.2d at 1354.

In making such a determination, courts within this district often consider the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Dees v. Hydradry*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

Upon my review of the Renewed Motion, I find that the parties' proposed settlement constitutes a fair and reasonable disposition of Thompson's unpaid overtime wage claim. As noted in the Court's April 2020 Order, the main issue presented here implicates the fourth and fifth factors above, both of which appear to have significantly affected Thompson's decision to accept far less than the $420,552 in damages she initially requested. As also noted in the Court's April 2020 Order, the

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

parties' original motion offered only conclusory assertions that their compromise was primarily due to their disagreement as to whether Thompson qualified as a non-exempt employee, the "significant possibility that [she] would recover nothing if she was found to be exempt," and the fact that, even if she were non-exempt, the parties disputed the number of hours she worked per week. (Doc. 27 at 3; Doc. 31 at 4).

While the Court found these summary averments deficient, the parties' Renewed Motion sets forth a more robust explanation for the disparity between Thompson's original claim for $420,552 in damages and the $11,123 for which she has agreed to settle. They now explain that after Thompson left her employment with G4S as a site supervisor, G4S promoted another individual (Tamara Rider) to take her position. (Doc. 32 at 1-2). Like Thompson, Rider left G4S and then sued the company for FLSA violations based on nearly identical facts to those presented in this action. *Id.* at 2. The lawyers who represent Thompson here also represented Rider.

The parties further explain that, because Rider's case was scheduled for trial first, G4S and Rider engaged in significant discovery. *Id.* (citing *Rider v. G4S Secure Solutions (USA) Inc.*, No. 8:19-cv-970-T-33TGW). According to the parties, that discovery revealed that "the Court or a jury could reasonably determine that the site supervisor position was exempt under either the administrative or executive exemption of the FLSA." *Id.* The discovery also called into question the total number of hours a site supervisor worked, particularly as a result of the deposition testimony obtained from the individuals currently occupying that position, including Thompson

and Rider's replacement. *Id.* GS4 and Thompson state that, because the evidence in the Rider matter significantly altered "the probability of success on the merits and the settlement discussions," the parties in that case settled for $4,124 (including wages and liquidated damages), or roughly 3% of what Rider originally claimed. (Doc. 32 at 2-4). The court in the Rider action approved that settlement as fair and reasonable. (Doc. 32 at 2-3; Doc. 32-2; Doc. 32-3).

G4S and Thompson represent that the evidence in the Rider matter largely applies here and that, as a result, they have employed the same formula to arrive at the agreed-upon settlement amount in this case. (Doc. 32 at 3). With the benefit of this more fulsome explanation, I respectfully recommend that the Court approve the parties' settlement. *See Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding persuasive the approval of a "substantially similar" FLSA settlement by another court from the Middle District of Florida in a factually analogous case), *report and recommendation adopted*, 2017 WL 4958770 (M.D. Fla. Nov. 1, 2017); *Knapp v. Riverglen Co.*, 2011 WL 2433621, at *2-3 (M.D. Fla. Apr. 20, 2011) (concluding that settlement amount in FLSA case was fair and reasonable where "[p]laintiff's initial [higher] demand was made 'without the benefit of time and pay records'" produced in discovery), *report and recommendation adopted*, 2011 WL 2413442 (M.D. Fla. June 14, 2011).

The fact that the parties' agreement includes a release provision does not alter my analysis. (Doc. 32-1 at 1). By my reading, this provision is not the type of general

or pervasive release that courts have found to be anathema to the FLSA. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010). Such general or pervasive releases are frequently viewed as "'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee." *Id.* at 1351 (citing *Dees*, 706 F. Supp. 2d at 1238-42). Because general releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer," they often do not survive judicial scrutiny. *Id.* at 1351-52.

The parties' narrowly-tailored release provision in this action does not implicate such concerns. Unlike the "pervasive and unbounded" release at issue in *Moreno*, which called for the plaintiff to surrender "a dizzying array of claims, known and unknown, against the defendant," *id*. at 1350-53, Thompson is not required to relinquish her right to pursue unknown claims unrelated to her unpaid wage claim. (Doc. 32-1 at 1). Rather, as noted above, the release is limited to wage and hour claims and provides only that Thompson has been paid all the compensation owed to her as a result of such claims. *Id*. As such, the release provision does not undermine the fairness or reasonableness of the parties' settlement agreement. *See, e.g., Dumas v. 1 Able Realty, LLC*, 2018 WL 1791534, at *3 (M.D. Fla. Apr. 12, 2018) (approving FLSA release that did not require plaintiff to release all claims, but only those asserted in complaint related to plaintiff's employment with defendant), *report and recommendation adopted*, 2018 WL 1791535 (Apr. 16, 2018); *Cooper v. Garda CL Se., Inc.*, 2015 WL

9244682, at *1 (M.D. Fla. Dec. 18, 2015) (finding a release limited "to federal and state law wage and overtime claims existing at the time of the settlement" to be reasonable).

With respect to the remaining matter of attorneys' fees and costs, the FLSA requires the Court to review the reasonableness of the proposed fee amount to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Here, the parties represent that the agreed-upon payment of $8,877 in fees and costs was negotiated separately from Thompson's recovery and without regard to the settlement amount. (Doc. 32 at 5; Doc. 32-1 at 2). The parties also represent that this figure is far less than what could have been sought under the lodestar method. (Doc. 32 at 5). These representations are sufficient. *Clarke*, 2017 WL 4958771, at *4 (finding attorney's fees in an FLSA settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar amount); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (providing that reasonableness may be demonstrated by representing that the parties agreed to plaintiff's attorney's fees separately and without regard to the amount paid to settle plaintiff's FLSA claim). As a result, I find that the requested amount for attorneys' fees and costs is both fair and reasonable.

III.

For the reasons set forth above, I find that the parties' settlement agreement is a fair and reasonable resolution of their bona fide disputes regarding Thompson's FLSA claim. *See Lynn's Food*, 679 F.2d at 1353-55. Accordingly, I recommend that the Court:

1) Grant the parties' Renewed Motion (Doc. 32);

2) Approve the parties' Settlement Agreement (Doc. 32-1);

3) Dismiss this action with prejudice; and

4) Direct the Clerk to terminate any pending motions and deadlines and to close the case.

Respectfully submitted this 24th day of June 2020.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal

conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record